## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

UNDER ARMOUR, INC.,

        Plaintiff,

vs.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A" and
DOES 1-100,

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Under Armour, Inc. ("Plaintiff" or "Under Armour"), hereby sues Defendants, The Partnerships and Unincorporated Associations Identified on Schedule "A" and Does 1-100 (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's trademarks within this judicial district through various fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under their partnership and/or business association names identified on Schedule "A" hereto (the "Subject Domain Names and iOffer Auction Stores"). In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark infringement and counterfeiting, false designation of origin, cybersquatting and common law unfair competition pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d). Accordingly, this Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Under Armour's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this judicial district, because they direct business activities toward and conduct business with consumers within the State of Florida and this judicial district through at least the fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under the Subject Domain Names and iOffer Auction Stores.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who engage in infringing activities and cause harm within this judicial district. Defendants have also advertised and, upon information and belief, have made sales and shipped infringing products into this judicial district.

## THE PLAINTIFF

4.      Under Armour is a corporation organized under the laws of the State of Maryland with its principal place of business in the United States located at 1020 Hull Street, Baltimore, Maryland 21230. Under Armour operates retail stores throughout the United States, including within this Judicial District. Under Armour is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this Judicial District, a variety of quality performance apparel, footwear, accessories, and sporting equipment, including, but not limited to t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags under multiple world famous common law and Federally registered trademarks including those identified in Paragraph 16 below. Under Armour offers for sale and sells its trademarked goods within this Judicial District. Defendants'

sales of counterfeit and infringing Under Armour branded products are causing damage to Under Armour within this Jurisdiction. Under Armour regularly enforces its intellectual property rights and authorized that this action be brought in its name.

5.      Like many other famous trademark owners in the retail clothing and accessory sector, Under Armour suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as the Defendants herein, who wrongfully reproduce and counterfeit Under Armour's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the Under Armour name and trademarks and the destruction of the legitimate market sector in which it operates.

6.      In order to combat the harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Under Armour expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars.

## THE DEFENDANTS

7.      Defendants are partnerships or unincorporated business associations, which operate through domain names registered with registrars in multiple countries, and commercial Internet auction stores via the third party marketplace website, iOffer.com, and are comprised of individuals and/or business entities of unknown makeup, all of whom, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems. The partnership and/or unincorporated association names used by Defendants are set forth on Schedule "A" hereto. Defendants have the capacity to be sued

pursuant to Federal Rule of Civil Procedure 17(b). Defendants conduct pervasive business throughout the United States, including within this judicial district through the operation of fully interactive commercial Internet websites and commercial Internet iOffer auction stores, existing under the Subject Domain Names and iOffer Auction Stores.

8.      Upon information and belief, Defendants use aliases in conjunction with the operation of their business as set forth in Schedule "A" hereto.

9.      Under Armour is presently unaware of the true names of Does 1-100 although they are generally identified as the owners, operators, partners, managing agents and/or co-conspirators of the named Defendants operating under the Subject Domain Names and iOffer Auction Stores. Under Armour will move to amend this Complaint upon discovery of the identities of such fictitious Defendants.

10.      Defendants are the past and present controlling forces behind the operation of the fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under at least the Subject Domain Names and iOffer Auction Stores.

11.      Upon information and belief, Defendants directly engage in unfair competition with Under Armour and engage in the advertisement, offering for sale and sale of goods bearing counterfeits and infringements of one or more of Under Armour's trademarks to consumers within the United States and this judicial district through multiple fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under, at least, the Subject Domain Names and iOffer Auction Stores. Defendants, upon information and belief, also operate additional websites and iOffer auction stores which promote and offer for sale counterfeit and infringing goods under domain names and/or iOffer auction stores not yet known to Under Armour. Defendants have purposefully directed some portion of their illegal activities

towards consumers in the State of Florida through the advertisement, offer to sell, sale, and shipment of counterfeit Under Armour-branded goods into the State.

12.     Defendants have registered, established or purchased, and maintained the Subject Domain Names and iOffer Auction Stores. Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various Registrars during the registration or maintenance process. Upon information and belief, Defendants have anonymously registered and maintained some of the Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

13.     Upon information and belief, Defendants will continue to register or acquire new domain names and iOffer auction stores for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of Under Armour's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' entire Internet-based website and auction store businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Under Armour and others.

15.     Defendants' business names, i.e., the Subject Domain Names and iOffer Auction Stores and any other domain names and iOffer auction stores used in connection with the sale of counterfeit and infringing goods bearing Under Armour's trademarks are essential components of Defendants' counterfeiting and infringing activities and are the means by which Defendants further their counterfeiting scheme and cause harm to Under Armour. Moreover, Defendants are using Under Armour's famous name and trademarks to drive Internet consumer traffic to their websites and auction stores operating under the Subject Domain Names and iOffer Auction

Stores, thereby increasing the value of the domain names and iOffer auction stores and decreasing the size and value of Under Armour's legitimate common marketplace at Under Armour's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

16.     Under Armour is the owner of all rights in and to the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Under Armour Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 2,727,031 | June 17, 2003 | IC 025: Clothing namely; shirts, hats, pants, t-shirts, underwear, brassieres, shorts, headbands, wristbands and socks. |
|  | 2,951,069 | May 17, 2005 | IC 025: Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles. |
| UNDER ARMOUR | 3,052,160 | January 31, 2006 | IC 009: Chin straps for use with protective helmets<br><br>IC 018: Toiletry kits, sold empty<br><br>IC 021: sports bottles, sold empty<br><br>IC 022: Lanyards for holding mouthpieces, water bottles, eyeglasses, badges, or keys<br><br>IC 024: Sports towels<br><br>IC 025: Gloves |
|  | 3,638,278 | June 16, 2009 | IC 035: Online retail store services featuring apparel, footwear, sporting goods, eyewear, headwear, wrist bands, sweat bands, belts, gloves, hand-warmers, plastic water bottles sold empty, watches, sports bags, tote bags, travel bags, backpacks, golf bags, messenger bags, duffel |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | bags, shoe bags for travel, toiletry bags sold empty, wheeled bags, waist packs, sling bags, umbrellas, towels, posters; Mobile retail store services featuring apparel, footwear, and sporting goods. |
|  | 3,722,112 | December 8, 2009 | IC 025: Ankle socks; Athletic footwear; Athletic uniforms; Baseball caps; Baseball shoes; Baseball uniforms; Baselayer bottoms; Baselayer tops; Beach footwear; Bib overalls; Boxer briefs; Boxer shorts; Briefs; Capri pants; Children's headwear; Coats; Dresses; Fleece pullovers; Football shoes; Foul weather gear; Golf shirts; Golf trousers; Hooded pullovers; Hooded sweat shirts; Hunting vests; Knit shirts; Ladies' underwear; Long-sleeved shirts; Men's socks; Men's underwear; Mittens; Moisture-wicking sports bras; Moisture-wicking sports pants; Moisture-wicking sports shirts; Polo shirts; Rain jackets; Rain trousers; Rainproof jackets; Rainwear; Running shoes; Short-sleeved shirts; Ski bibs; Ski gloves; Ski jackets; Ski pants; Ski wear; Sleeveless jerseys; Snow pants; Snowboard gloves; Snowboard mittens; Snowboard pants; Soccer boots; Sport shirts; Sports bras; Sports jackets; Sports jerseys; Sports pants; Sports shirts; Sweat bands; Sweat pants; Sweat shirts; Tennis wear; Thongs; Thongs; Training shoes; Undershirts; Unitards; Visors; Waterproof jackets and pants; Wind pants; Wind resistant jackets; Wind shirts. |

The Under Armour Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above.

17.     The Under Armour Marks have been used in interstate commerce to identify and distinguish Under Armour's quality t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, toiletry bags, and other goods for an extended period of time and serve as symbols of Under Armour's quality, reputation, and goodwill.

18.     The Under Armour Marks are well-known and famous and have been for many years. Under Armour has expended substantial time, money and other resources developing, advertising and otherwise promoting the Under Armour Marks. The Under Armour Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

19.     Under Armour has extensively used, advertised and promoted the Under Armour Marks in the United States in connection with the sale of quality t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, toiletry bags, and other goods and has carefully monitored and policed the use of the Under Armour Marks. Under Armour has spent millions of dollars promoting the Under Armour Marks and products bearing the Under Armour Marks. In recent years, annual sales of products bearing the Under Armour Marks have totaled in the hundreds of millions of dollars within the Unites States.

20.     As a result of Under Armour's efforts, members of the consuming public readily identify merchandise bearing the Under Armour Marks, as being high quality goods sponsored and approved by Under Armour.

21.     Accordingly, the Under Armour Marks have achieved secondary meaning as identifiers of quality t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, toiletry bags, and other goods.

22.     The Under Armour Marks are symbols of Under Armour's quality, reputation and goodwill and have never been abandoned.

23.     Under Armour has carefully monitored and policed the use of the Under Armour Marks and has never assigned or licensed the Under Armour Marks to any of the Defendants in this matter.

24.     Genuine goods bearing the Under Armour Marks are widely legitimately advertised and promoted by Under Armour, its authorized distributors and unrelated third parties via the Internet. Over the course of the past five to seven years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Under Armour's overall marketing and consumer education efforts. Thus, Under Armour expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Under Armour and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Under Armour brand and the goods sold thereunder.

**Defendants' Infringing Activities**

25.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce that bearing counterfeit and infringing trademarks which are exact copies of Under Armour Marks, including without limitation, t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags (collectively, the "Counterfeit Goods") through the fully interactive commercial Internet websites and commercial Internet iOffer auction stores operating under the Subject Domain Names and iOffer Auction Stores. Specifically, upon information and belief, Defendants are using identical copies of the Under Armour Marks for different quality goods. Under Armour had used the Under Armour Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Under Armour's merchandise.

26.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Under Armour's genuine goods. Defendants, upon

information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Under Armour despite Defendants' knowledge that they are without authority to use the Under Armour Marks. The net effect of Defendants' actions will cause confusion of consumers who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Under Armour.

27.     Defendants advertise their Counterfeit Goods for sale to the consuming public via websites and auction stores operating under at least the Subject Domain Names and iOffer Auction Stores. In so advertising these goods, Defendants use the Under Armour Marks without Under Armour's permission. Indeed, Defendants herein misappropriated Under Armour's advertising ideas and entire styles of doing business with regard to the advertisement and sale of Under Armour's genuine goods. Upon information and belief, the misappropriation of Under Armour's advertising ideas in the form of the Under Armour Marks is the proximate cause of damage to Under Armour.

28.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, all employing substantially similar, and often times coordinated, SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Under Armour Marks. Specifically, Defendants are using counterfeits of Under Armour's famous name and the Under Armour Marks in order to make their websites and iOffer auction stores selling illegal goods appear more relevant and attractive to search engines across an array of search terms. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for Under Armour's genuine goods. Defendants are

causing concurrent and indivisible harm to Under Armour and the consuming public by (i) depriving Under Armour and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Under Armour's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Under Armour Marks, and (iii) increasing Under Armour's overall cost to market its goods and educate consumers about its brand via the Internet.

29.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this judicial district and elsewhere throughout the United States. As a result, Defendants are defrauding Under Armour and the consuming public for Defendants' own benefit.

30.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Under Armour's ownership of the Under Armour Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

31.     Defendants' use of the Under Armour Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Under Armour's consent or authorization.

32.     Further, Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowing and intentionally or with reckless disregard or willful blindness to Under Armour's rights for the purpose of trading on Under Armour's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Under Armour and the consuming public will continue to be harmed.

33.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Under Armour's genuine goods and Defendants' Counterfeit Goods, which there is not.

34.     Further, upon information and belief, at least two (2) of the Defendants have registered Subject Domain Names using marks which are nearly identical and/or confusingly similar to or dilutive of at least one of the Under Armour Marks (collectively the "Infringing Subject Domain Names").  The Infringing Subject Domain Names are set forth on Schedule "B" hereto.

35.     Upon information and belief, Defendants have registered and/or used the Infringing Subject Domain Names with the bad faith intent to profit from the Under Armour Marks.

36.     Defendants do not have, nor have they ever had, the right or authority to use the Under Armour Marks.  Further, the Under Armour Marks have never been assigned or licensed to be used on any of the websites operating under the Infringing Subject Domain Names.

37.     Upon information and belief, Defendants have provided false and/or misleading contact information when applying for the registration of the Infringing Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Infringing Subject Domain Names.

38.     Upon information and belief, Defendants have never used any of the Infringing Subject Domain Names, in connection with a bona fide offering of goods or services.

39.     Upon information and belief, Defendants have not made any bona fide non-commercial or fair use of the Under Armour Marks on a website accessible under any of the Infringing Subject Domain Names.

40.     Upon information and belief, Defendants have intentionally incorporated the Under Armour Marks in their Infringing Subject Domain Names to divert consumers looking for Under Armour's Internet website to their own Internet websites for commercial gain.

41.     Under Armour has no adequate remedy at law.

42.     Under Armour is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Under Armour Marks. If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Under Armour and the consuming public will continue to be harmed.

43.     The harm and damages sustained by Under Armour have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

<u>**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT**</u>

44.     Under Armour hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 43 above.

45.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Under Armour Marks in commerce in connection with the promotion, advertisement, distribution, sale and offering for sale of the Counterfeit Goods.

46.     Defendants are promoting and otherwise advertising, selling, offering for sale and distributing, at least, t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags using counterfeits and infringements of one or more of the Under Armour Marks. Defendants are continuously infringing and inducing others to infringe the Under Armour Marks by using them to advertise, promote, and sell, at least, counterfeit and infringing t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags.

47.     Defendants' coordinated, concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

48.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damages to Under Armour and are unjustly enriching the Defendants at Under Armour's expense.

49.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Under Armour Marks in violation of Under Armour's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

50.     Under Armour has suffered and will continue to suffer irreparable injury due to the Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT

51.     Under Armour hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 43 above.

52.     Defendants' Counterfeit Goods bearing and sold under copies of the Under Armour Marks have been widely advertised and distributed throughout the United States.

53.     Defendants' Counterfeit Goods bearing and sold under copies of the Under Armour Marks are virtually identical in appearance to Under Armour's genuine goods. However, Defendants' Counterfeit Goods are different and likely inferior in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

54.     Defendants, upon information and belief, have used in connection with their sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Under Armour.

55.     Defendants have authorized an infringing use of the Under Armour Marks, in Defendants' advertisement and promotion of their counterfeit and infringing Under Armour-branded t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

56.     Additionally, Defendants are using counterfeits and infringements of the Under Armour Marks in order to unfairly compete with Under Armour and others for space within

search engine organic results, thereby jointly depriving Under Armour of a valuable marketing and educational tool which would otherwise be available to Under Armour and reducing the visibility of Under Armour's genuine goods on the World Wide Web.

57.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

58.     Under Armour has sustained injury and damage caused by Defendants' concurrent conduct, and absent an entry of an injunction by this Court, Under Armour will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

### COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING UNDER §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))

59.     Under Armour hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 43 above.

60.     Upon information and belief, the Defendants identified on Schedule B hereto (the "Cybersquatting Defendants") have acted with the bad faith intent to profit from the Under Armour Marks and the goodwill associated with the Under Armour Marks by registering and using their respective Infringing Subject Domain Names, as identified on Schedule "B" hereto.

61.     The Under Armour Marks were distinctive and famous at the time the Cybersquatting Defendants registered the Infringing Subject Domain Names.

62.     The Infringing Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the Under Armour Marks.

63.     The Cybersquatting Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

64.     The Cybersquatting Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Under Armour.  Under Armour tton has no adequate remedy at law.

65.     Under Armour has suffered and will continue to suffer irreparable injury due to the above-described activities of the Cybersquatting Defendants if the Cybersquatting Defendants are not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

66.     Under Armour hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 43 above.

67.     This is an action against Defendants based on their manufacture, promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to the Under Armour Marks in violation of Florida's common law of unfair competition.

68.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Under Armour Marks. Defendants are also using counterfeits and infringements of the Under Armour Marks to unfairly compete with Under Armour and others for (1) space in search engine results across an array of search terms and (2) visibility on the World Wide Web.

69.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Under Armour Marks.

70.     Under Armour has no adequate remedy at law and is suffering irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

71.     WHEREFORE, Under Armour demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

a.     Entry of preliminary and permanent injunctions pursuant to Federal Rule Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Under Armour Marks; from using the Under Armour Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Under Armour; from falsely representing themselves as being connected with Under Armour, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Under Armour; from using any reproduction, counterfeit, copy, or colorable imitation of the Under Armour Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants, including, without limitation, t-shirts, moisture wicking sports shirts, tank tops, sports jerseys, sports bras, underwear, shorts, pants, capri pants, hooded sweat shirts, and toiletry bags; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent

Defendants' goods as being those of Under Armour, or in any way endorsed by Under Armour and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Under Armour's name or trademarks; and from otherwise unfairly competing with Under Armour.

        b.     Entry of an Order requiring the Subject Domain Names, and any other domain names being used and controlled by Defendants to engage in the business of marketing, offering to sell and/or selling goods bearing counterfeits and infringements of the Under Armour Marks be disabled and/or immediately transferred by Defendants, their Registrars, and/or the Registries, to Under Armour's control.

        c.     Entry of an Order that, upon Under Armour's request, the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files maintained by the Registries or their administrators which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

        d.     Entry of an order canceling for the life of the current registration or, at Under Armour's election, transferring the Subject Domain Names and any other domain names used by the Defendants to engage in their counterfeiting of the Under Armour Marks at issue to Under Armour's control so they may no longer be used for illegal purposes.

        e.     Entry of an Order that, upon Under Armour's request, any Internet search engines, Web hosts, domain-name registrars and domain-name registries or administrators which are provided with notice of the injunction, cease facilitating access to any or all websites through

19

which Defendants engage in the promotion, offering for sale and/or sale of goods bearing counterfeits and/or infringements of the Under Armour Marks.

f.       Entry of an Order that, upon Under Armour's request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registries or their administrators responsible for the Subject Domain Names facilitate the transfer and/or disable the Subject Domain Names.

g.       Entry of an Order requiring Defendants to account to and pay Under Armour for all profits and damages resulting from Defendants' trademark infringing and counterfeiting activities and that the award to Under Armour be trebled, as provided for under 15 U.S.C. §1117, or, at Under Armour's election with respect to Count I, that Under Armour be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

h.       Entry of an Order requiring the Cybersquatting Defendants to account to and pay Under Armour for all profits and damages resulting from those Defendants' respective cybersquatting activities and that the award to Under Armour be trebled, as provided for under 15 U.S.C. §1117, or, at Under Armour's election with respect to Count III, that Under Armour be awarded statutory damages from Defendants in the amount of one hundred thousand dollars ($100,000.00) per pirated domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

i.       Entry of an award of Under Armour's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

     j.  Entry of an Order requiring all funds, up to and including the total amount of judgment, in payment accounts or money transfer systems used in connection with the Subject Domain Names and iOffer Auction Stores, including PayPal, Inc., and any other payment processing accounts, to be surrendered to Under Armour in partial satisfaction of the monetary judgment entered herein.

     k.  Entry of an award of pre-judgment interest on the judgment amount.

     l.  Entry of an Order for any further relief as the Court may deem just and proper.

DATED: March 6, 2014.      Respectfully submitted,

            STEPHEN M. GAFFIGAN, P.A.

            By: _____s:/smgaffigan/_____
            Stephen M. Gaffigan (Fla. Bar No. 025844)
            Virgilio Gigante (Fla. Bar No. 082635)
            T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
            401 East Las Olas Blvd., Suite 130-453
            Ft. Lauderdale, Florida 33301
            Telephone: (954) 767-4819
            Facsimile: (954) 767-4821
            E-mail: Stephen@smgpa.net
            E-mail: Leo@smgpa.net
            E-mail: Raquel@smgpa.net

            Attorneys for Plaintiff
            UNDER ARMOUR, INC.

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND**
**SUBJECT DOMAIN NAMES AND iOFFER AUCTION STORES**

| Defendant Number | Defendant/Subject Domain Names and iOffer Auction Stores |
|---|---|
| 1 | 2013sportsjerseys.com |
| 1 | acheapjerseys.com |
| 1 | goodvjerseys.com |
| 1 | holdjerseys.com |
| 1 | jerseyswholedaily.com |
| 1 | mydailyjerseys.com |
| 1 | wholesalejerseys7.com |
| 2 | 2013jerseysbynike.com |
| 3 | 911jerseys.co |
| 4 | attractivejerseys.com |
| 5 | bandjerseys.com |
| 6 | cheap-brandname.com |
| 7 | cooljerseysshop.com |
| 8 | jerseys.cd |
| 8 | msnjerseys.com |
| 9 | jerseyschinashop.net |
| 10 | newshowjersey.com |
| 11 | projerseyworld.com |
| 12 | sincereshopping.com |
| 13 | soccerjerseycool.com |
| 14 | hongtai8888 |
| 15 | jiaqi999 |
| 16 | kuailetianshi168 |
| 17 | 2013buyjerseyscity.com |
| 18 | 2013newjerseyscity.com |
| 19 | authenticjerseywholesalecheap.com |
| 20 | buyjerseyssite.com |
| 21 | cheapjerseysaleusa.com |
| 22 | cheapjerseyswholesalejersey.com |
| 22 | cheapjerseywholesaleauthentic.com |
| 23 | cheapnflget.com |
| 24 | cheapnfljerseysmr.com |
| 25 | cheapnfljerseysor.com |
| 26 | cheapwholesale-nfl.com |

| Defendant Number | Defendant/Subject Domain Names and iOffer Auction Stores |
|---|---|
| 27 | chooljerseyscity.com |
| 28 | chooljerseysworld.com |
| 29 | collegejerseyshome.com |
| 30 | cowboysnfljerseys.com |
| 31 | football-jersey-sale.com |
| 32 | football-jerseys-professional.com |
| 33 | footballjerseysuppliercheap.com |
| 34 | gochinacheapjerseys.com |
| 35 | hockeyjerseyauthenticcheap.com |
| 36 | ijerseysclub.com |
| 37 | jersey.la |
| 38 | jerseysauthenticwholesalejerseycheap.com |
| 38 | jerseysauthenticwholesalejersey.com |
| 39 | jerseys-in-wholesale.com |
| 40 | jerseywill.com |
| 41 | mensnfljerseysoutlet.com |
| 42 | newjerseysinfo.com |
| 43 | nhljerseysonlinehome.com |
| 44 | nikejersey.co |
| 45 | ofjerseysstore.com |
| 46 | paylessjerseys.com |
| 47 | shopjerseysofficial.com |
| 48 | sportsjerseystrade.com |
| 49 | tojerseyssuppliers.com |
| 50 | underarmourcanadaoutlet.com |
| 51 | underarmourusaoutlet.com |
| 52 | vikingsjerseyfans.com |
| 53 | wholesalenfljerseys.com |

**SCHEDULE "B"**
**INFRINGING SUBJECT DOMAIN NAMES**

| Defendant Number | Defendant/Infringing Subject Domain Names |
|---|---|
| 50 | underarmourcanadaoutlet.com |
| 51 | underarmourusaoutlet.com |